UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

CALVIN D. STRANGE                                                                 PLAINTIFF

v.                                              CIVIL ACTION NO. 1:12CV-P85-R

COMMONWEALTH OF KENTUCKY et al.                      DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff, Calvin D. Strange, Jr., filed a *pro se*, *in forma pauperis* complaint and amended complaint pursuant to 42 U.S.C. § 1983.[1] This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed in part and allowed to continue in part.

**I. SUMMARY OF CLAIMS**

Plaintiff, a pretrial detainee at the Warren County Regional Jail (WCRJ), sues the Commonwealth of Kentucky and the following WCRJ employees in their official capacities: Jailer Jackie Strode; Chief Deputy Misse Edmonds; and Medical Director Jaimie Pruitt. He alleges that the prison library is inadequate and that his attempt to have his family provide him with magazines resulted in the prison seizing most of them citing fire hazards. He alleges that he cannot have a prayer rug, read the Torah, attend worship, or practice his religion (Judaism). He alleges that the prison conducts searches for no reason. He complains that personal property has been taken from him; that he is charged for copies; that he is not given enough stamps; and that the grievance system is inadequate. He also alleges that the prison has a policy of not treating

---

[1] The complaint also was signed by and listed as Plaintiffs Keith H. Hartman and Eric T. Patton. Those Plaintiffs' claims have been severed from the instant action. Initial review of the claims brought by Plaintiff Strange is now appropriate.


chronic diseases and that he has been denied medical treatment and medicine. Plaintiff asks for monetary, punitive, and injunctive relief.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

***Claims against the Commonwealth of Kentucky***

First, Plaintiff is housed in a county facility, not a state facility. Moreover, the Court lacks subject-matter jurisdiction over Plaintiff's constitutional claims against the Commonwealth of Kentucky because the Eleventh Amendment to the U.S. Constitution specifically prohibits federal courts from entertaining suits brought directly against the states themselves. The

Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST., amend. XI.  Although the Eleventh Amendment does not address the situation where a state's own citizen initiates suit against it, case law has interpreted the amendment in such a way as to foreclose that possibility.  *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).  Therefore, Plaintiff's claims against the Commonwealth of Kentucky will be dismissed.

*Access to reading materials*

Plaintiff alleges that the WCRJ library only has about 300 books, many of which are duplicates.  He states that the library does not have any newspapers or periodicals and that he is not able to follow current events.  He states that his family subscribed on his behalf to a monthly periodical, *The Robb Report*, weekly periodicals, *Time Magazine* and *Newsweek*, and the *Tennessean News Paper*.  However, he states:

> I can only receive two magazines every 90 days, so I can receive 8 out of the 24 magazines, the others Time Newsweek and the Tennessean were den[i]ed as contraband, all of these were seized by the jail.  I asked what's happening to them[.] Misse Edmonds said that "I donated them to the jailer" Jackie Strode.  I didn't donate anything they were illegally seized.  I was told by [Defendant] Edmonds that it was a fire hazzard for me to have a newspaper or any other news periodical or magazines, but we don't have fire sprinklers or extinguishers in our cells.

Plaintiff sues the WCRJ-employee Defendants in their official capacities.  If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity.  *Will v. Mich. Dep't of State Police*, 491

U.S. 58, 71 (1989). Therefore, in the case at bar, Plaintiff's claims against the employees of the WCRJ in their official capacities are actually brought against Warren County. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, like Warren County, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 120 (1992).

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v.*

*City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)).  The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983."  *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

Prisoners retain a First Amendment right to newspapers, magazines, and other reading material.  However, this right is subject to regulations that are reasonably related to legitimate penological interests.  *See Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996).  In this case, there might very well be legitimate reasons for the alleged confiscation of reading materials, assuming such confiscation took place.  However, for purposes of initial review, the Court will allow the First Amendment claim to go forward.

*Freedom to practice religion*

Plaintiff alleges that he "can't have a prayer rug, attend worship, read the Torah, or even practice [his] religion" at WCRJ.  Elsewhere he states that he cannot have a "yamike" and that there are no rabbis at WCRJ.  The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S CONST. Amend I.  Inmates retain their First Amendment right to exercise their religious beliefs.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam).  To establish a free-exercise violation, an inmate must show that defendants burdened the practice of religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penological interests.  *See Turner v. Safley*, 482

5

U.S. 78, 89 (1987). On initial review, the Court will allow Plaintiff's freedom-of-religion claim to go forward.

*Taking of personal property*

Plaintiff claims that various items of his personal property including magazines, undershirts, law books, hygiene items, and self-addressed stamped envelopes have been taken from him by jail personnel "who are of lower rank to that of [Defendant] Edmonds the facilitator of the conspiracy to deny the plaintiff of his own personal property." A prisoner claiming an unauthorized, intentional deprivation of property in violation of the Due Process Clause must show that state post-deprivation remedies are inadequate. *Hudson v. Palmer*, 468 U.S. 517, 531-33 (1984); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). Kentucky has adequate post-deprivation remedies for the confiscation or destruction of property, such as a tort action for conversion against individual defendants. *See Wagner v. Higgins*, 754 F.2d 186, 192 (6th Cir. 1985). Consequently, Plaintiff's claims related to his lost property must be dismissed.

*Illegal search*

Plaintiff alleges that WCRJ has a policy to remove detainees and prisoners to the library during contraband searches every week. He alleges that this practice is excessive considering they are "all locked in and can't leave the dorm area, and visits are controlled" and they have no outside contact with the public. His complaint also states that on one occasion a deputy misplaced a handcuff key, which then prompted a search of the pod where Plaintiff is housed and a strip search of those prisoners, including Plaintiff.

Plaintiff cannot assert that the search of his cell constitutes a violation of the Fourth Amendment. The Fourth Amendment provides, in part: "The right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . . ." U.S. CONST. amend. IV.  In *Hudson v. Palmer*, an inmate brought an action under § 1983 claiming, in part, that the destruction of his personal property during a search of his cell violated his Fourth Amendment right to be free from unreasonable searches and seizures.  In rejecting the inmate's claim, the Supreme Court stated that a prisoner does not possess "any subjective expectation of privacy . . . in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of the prison cell."  *Hudson*, 468 U.S. at 526.  Thus, here, Plaintiff has failed to allege a cognizable Fourth Amendment claim regarding the search of his cell.

With regard to the strip search, inmates retain some limited Fourth Amendment rights upon commitment to a correctional facility, but those rights have to be balanced with the significant and legitimate security interests of the prison.  *See Bell v. Wolfish*, 441 U.S. 520, 560 (1979) (finding that visual body-cavity searches of pretrial detainees was reasonable).  A strip search, therefore, will survive a Fourth Amendment challenge so long as it is reasonable.  *Id.*

The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  *Id.* at 559.  The Fourth Amendment does not prohibit the search of an inmate's person, so long as the search is reasonable in scope, manner, and location; is reasonably related to a valid penological goal; and, is not performed for a wrongful purpose, such as to humiliate or degrade a prisoner.  *Id.*

Plaintiff claims that the strip search occurred because an officer could not find a handcuff key. "'[P]articularized searches where objective circumstances indicate such searches are needed to maintain institutional security' [are] permissible . . . ." *Jackson v. Herrington*, 393 F. App'x 348, 355 (6th Cir. 2010) (per curiam) (citation omitted). It does not appear to this Court that a strip search of inmates after a handcuff key is reportedly missing violates the Fourth Amendment. This claim will be dismissed as well.

*Adequacy of grievance procedure*

Plaintiff alleges that WCRJ has an inadequate grievance process and that "[t]here is no appealing the grievance." Specifically, he relates that he filed a grievance after $15 worth of copies were made incorrectly and that Defendant Edmonds told him that the grievance was denied. When he told her that the photocopies were made incorrectly, she told him, "'We are not Kinko's. Next time go to Kinko's. Oh, my bad, you can't, you are in jail.'" Plaintiff states that Defendant Edmonds "then laughed . . . and walked away still laughing."

An inmate grievance procedure within the prison system is not constitutionally required. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). If the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right. *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Thus, Plaintiff's claim relating to the lack of an adequate grievance procedure must be dismissed.

Nor do Plaintiff's allegations regarding Defendant Edmonds's insulting manner rise to the level of a constitutional violation. The Sixth Circuit has held that harassing or degrading language by a prison official, although unprofessional and despicable, does not amount to a constitutional tort. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v.*

*Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.").

*Treatment for medical conditions*

Plaintiff alleges that WCRJ has a policy of not treating chronic conditions. He states that he has a terminal condition – cirrhosis of the liver – and has several bulging and protruding discs as well as a herniated disc causing radiating pain in his back, neck, and leg. He alleges that because WCRJ does not treat chronic illnesses he has been forced to suffer "excruciating pain and periods of diarrhea, without medication." He alleges that he is starting to lose weight, he is sleeping less, and "hurting more." In particular, he states that his pain medicine was given to the jail by the U.S. Marshal Service and a fresh prescription was delivered from his pharmacy, but he was denied his pain medication because WCRJ will not treat chronic pain. He states that WCRJ was provided with medical documentation to verify the medical issues he suffers. He states that he "was forced to have Magistrate Griffin in Nashville to issue an Order reflective these concerns for 10 months I've suffered without proper pain medication. I've had an x-ray without follow-up due to money restraint by the U.S. Marshals Service, all in violation of the Eighth Amendment of the United States Constitution."

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). On initial review, the Court will allow Plaintiff's Eighth Amendment claims against Defendants Strode, Edmonds, and Pruitt to go forward.

*Access to court*

Plaintiff alleges that WCRJ has a policy of denying indigent detainees any photocopying work. He complains that when he asked for a standard § 1983 complaint form, which is free from the Court's website, he was told to pay $.15 a page for copies. He states that, instead he wrote to the clerk of this Court to ask for copies. He states that he is only allowed two postage-free letters a week, so he cannot mail out documents that require more than two stamps. He alleges, "This keeps me from being able to conduct business between the courts and my attorney and my family and friends. I have to choose between them." He asserts that WCRJ's policy of two free stamps a week and denying photocopies to indigent prisoners violates his Fourteenth Amendment rights by restraining his right to access the courts. He also states that to comply with the requirement of the court he must file a copy of his trust account statement but alleges that an indigent person will be denied the account statement if he cannot pay the $.50 for the form. He also alleges that "if you cannot pay for postage your documents will 'not' be mailed, effectively and deliberately interfering with a right of access to court." He states that on June 18, 2012, he "attempted to mail this completed Bivens complaint. That request was den[i]ed. Deputy John Sanders concluded that [he] had insufficient funds in [his] trust account to pay the postage to mail this document to this Court effectively rendering nugatory [his] constitutional right of access to court."

"The First Amendment protects an inmate's right to access to the courts, but not

necessarily his access to all the legal assistance or materials he may desire." *Tinch v. Huggins*, No. 99–3436, 2000 WL 178418, at *1 (6th Cir. Feb. 8, 2000) (citing *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985)). "The law is well settled that inmates do not enjoy a federally protected right in free photocopying services." *Tinch*, 2000 WL 178418, at *1. Moreover, Plaintiff has no right to free postage for nonlegal mail. *Argue v. Hofmeyer*, 80 F. App'x at 429.

To state a claim for denial of access to the courts, Plaintiff must demonstrate that he suffered actual injury as a result of WCRJ policies. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). This injury requirement is not satisfied by just any type of frustrated legal claim. *Id.* A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of a specific criminal defense, non-frivolous direct appeal, habeas corpus application, or civil rights action. *Id.*; *Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999). Plaintiff does not allege that he suffered any actual injury due to the conditions he describes in his complaint. Although he alleges that, due to lack of funds, he was not allowed to mail his completed complaint form on June 18, 2012, the Court in fact received the complaint form on July 3, 2012. Thus, Plaintiff has not suffered any actual injury. Plaintiff's claims regarding access to the courts will be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court will by separate Order dismiss Plaintiff's claims against the Commonwealth of Kentucky and his claims relating to the taking of his property, searches of his cell and his person, the grievance procedure, and denial of access to the courts. The Court will allow Plaintiff's claim relating to reading material and his freedom-of-religion claim to go forward against Defendants Strode and Edmonds and his Eighth Amendment

11

medical treatment claims to go forward against Defendants Strode, Edmonds, and Pruitt. In allowing these claims to proceed past initial review, the Court expresses no opinion on the ultimate merit of those claims. A separate Scheduling Order will be entered to govern the development of those claims.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Warren County Attorney
4413.009