UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12-CV-00085

CALVIN D. STRANGE     Plaintiff

v.

COMMONWEALTH OF KENTUCKY, *et al.*     Defendants

**MEMORANDUM OPINION**

This matter is before the Court upon Defendant Jaimie Pruitt and Defendants Jackie Strode and Misse Edmonds' respective Motions for Summary Judgment. (Docket Nos. 54 & 37, respectively.) Plaintiff Calvin Strange, *pro se*, has filed a Response in which he collectively addresses Defendants' Motions. (Docket No. 68.) Defendant Pruitt and Defendants Strode and Edmonds have each filed a separate Reply, (Docket Nos. 72 & 73, respectively), and Defendants Strode and Edmonds have also joined in Defendant Pruitt's Reply, (*see* Docket No. 73, ¶ 2). These matters now are fully briefed and ripe for adjudication. For the reasons that follow, the Court will GRANT Defendants' respective Motions for Summary Judgment, (Docket Nos. 37 & 54).

Relative to Defendants' instant Motions are several other motions currently pending before the Court: Plaintiff's Motion for Summary Judgment, (Docket No. 36), and Defendant Pruitt's Motion for Leave to File Supplement to Motion for Summary Judgment, (Docket No. 79). Because the Court finds that summary judgment in

Defendants' favor is appropriate, these pending motions, (Docket Nos. 36 & 79), will be DENIED as moot.

BACKGROUND

Plaintiff Calvin Strange is, and has been since August 2011, incarcerated at the Warren County Regional Jail (the "Jail"). Strange initially filed a joint complaint with two other inmates. The Court subsequently severed Strange's claims and ordered him to file an amended complaint stating only his individual claims. He did so, and the Court thereafter conducted an initial screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). As a result of that screening, the Court dismissed Strange's claims against the Commonwealth of Kentucky, as well as his claims relating to the taking of his personal property, searches of his cell and person, the grievance procedure, and denial of access to the courts. (Docket No. 21.) The Court allowed Strange to proceed with his First Amendment claims relating to reading material and freedom of religion against Defendants Strode and Edmonds, and also his Eighth Amendment medical treatment claims against Defendants Strode, Edmonds, and Pruitt. (Docket No. 20, at 11-12.)

Strange alleges that his First and Eighth Amendment rights have been violated. Specifically, he claims that he has limited access to reading material, has been denied the freedom to practice his religion of Judaism, and that the Jail has a policy of not treating his chronic medical conditions. The Jail has, at all times during Strange's incarceration there, had an inmate grievance procedure in effect that was available to Strange. (*See* Docket Nos. 37-2, at 1; 37-3, at 2.) The procedures for filing grievances

are set forth on a form titled "Warren County Jail Inmate Rights & Rules and Services Offered to Inmates." (Docket No. 37-3.) Defendants have submitted a copy of this form that was signed by Strange on August 12, 2011. (Docket No. 37-4.) Immediately above Strange's signature is the bolded, all capital-letter acknowledgement "**I RECEIVED A COPY AND UNDERSTAND THE RULES AND REGULATIONS OF THE JAIL AND MY RIGHTS AS AN INMATE AT THE WARREN COUNTY JAIL.**" (Docket No. 37-4, at 2.) According to the grievance procedure outlined on that form, an inmate is permitted to submit grievances whenever he believes he "has been subject to abuse, harassment, or abridgement of civil rights." (Docket No. 37-4, at 2.) The policy requires that all grievances be filed within 48 hours of the complained of event or act. (Docket No. 37-4, at 2.) The "Jailer or his/her designee" will then respond within 10 days of receipt. (Docket No. 37-4, at 2.) The policy further provides that if the inmate's grievance is denied or if an inmate is not satisfied with the response, he may appeal within 48 hours of the initial response, and that his appeal will be responded to within 10 days. (Docket No. 37-4, at 2.)

Strange has submitted seven grievances during his time at the Jail:

| | | |
|---|---|---|
| (1) | September 2, 2011 | complaint concerning medication |
| (2) | September 12, 2011 | complaint concerning copies of documents made by Jail staff |
| (3) | January 18, 2012 | complaint concerning charges to inmate account for medical visits |
| (4) | February 8, 2012 | complaint concerning confiscation of Strange's towels and wash cloths |

| (5) | May 1, 2012 | complaint concerning confiscation of Strange's personal property, including "2 Robb Report magazines, my pillow, . . . my dictionary, another magazine . . . my blue towel and wash cloths and some religious pamphlets, . . . [and] bottle of dandruff shampoo" |
|---|---|---|
| (6) | May 2, 2012 | complaint regarding request for inmate account summary |
| (7) | May 22, 2012 | complaint concerning confiscation of various property during cell search, including "2 lawbooks and a phonebook belonging to MY ATTORNEY . . . 'envelopes' of my personal mail, 4 new white undershirts and 3 new pairs of socks" |

(*See* Docket No. 37-5.) Because Strange's remaining claims concern only his medical treatment, freedom to practice his religion, and the confiscation of his reading material, most of these grievances have no relevance here.

His first grievance, which was filed September 2, 2011, (Grievance #1), is the only grievance filed relative to his medical treatment claims against Defendant Pruitt. In Grievance #1, Strange acknowledged he was receiving his medication, Elavil, but disagreed with the manner in which that medication was given to him. (*See* Docket No. 37-5, at 1-2.) Specifically, Strange complained that his Elavil was crushed when he received it. According to Strange, that medication was not designed to be crushed and taking it in that form caused him "a near overdose." (Docket No. 37-5, at 1.) He also complained that other medication was crushed together with his Elavil. Defendant Pruitt responded to Grievance #1 four days later on September 6, stating that the

Page 4 of 10

medication would be reviewed with Strange and that lab work had been ordered for him. (Docket No. 37-5, at 2.) Pruitt also noted that his medication had been "crushed in a clean pill crusher," which was "only used for [inmate] Elavil." (Docket No. 37-5, at 2.) Strange did not appeal Grievance #1.

The only other relevant grievances are Strange's May 1, 2012, grievance (Grievance #5), and May 22, 2012, grievance (Grievance #7). Grievance #5, as it relates to Strange's remaining claims, concerns the confiscation of several magazines, a dictionary, and "some religious pamphlets." (Docket No. 37-5, at 11.) Defendant Edmonds responded and denied that grievance three days later on May 4. (Docket No. 37-5, at 12.) Strange did not appeal Grievance #5. Grievance #7, as it relates to Strange's remaining claims, concerns the confiscation of "2 lawbooks" and a phonebook Strange says belonged to his attorney. (Docket No. 37-5, at 21.) Defendant Edmonds responded to that grievance two days later on May 24, stating that one law book and one phonebook were returned to Strange, but the other law book "had another inmate's name" and would not be returned. (Docket No. 37-5, at 22.) Strange appealed this decision in accordance with Jail policy by submitting his appeal that same day. (Docket No. 37-5, at 25-26.) Strange's appeal was answered and denied four days later on May 28. (Docket No. 37-5, at 26.) Strange's other grievances do not appear relevant to his remaining claims, and Strange did not appeal any of those grievances.

Defendant Pruitt and Defendants Strode and Edmonds now separately move for summary judgment on Strange's claims against them on the basis that Strange failed to exhaust his administrative remedies. Defendants Strode and Edmonds also argue that

Grievance #7, the only grievance Strange appealed, is irrelevant because Strange's original Complaint, (Docket No. 1), and Amended Complaint, (Docket No. 15), focus entirely on his being prevented from obtaining magazines and periodicals or his having those materials confiscated; neither his Complaint nor Amended Complaint make any mention of "lawbooks" or a phonebook belonging to his attorney. (*See* Docket No. 37-1, at 4-5.)

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of her position; she must present evidence on which the trier of fact could reasonably find for her. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## DISCUSSION

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a). The Supreme Court has firmly held that exhaustion is mandatory and not within the discretion of the district court. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

This exhaustion requirement applies "[e]ven when a prisoner seeks relief not available in grievance proceedings, notably monetary damages," as well as "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 524, 532. "Proper exhaustion," according to the Supreme Court, means "compliance with an agency's deadlines and other critical procedural rules." *Woodford*

*v. Ngo*, 548 U.S. 81, 91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

Strange expressly concedes in his Response to Defendants' Motions for Summary Judgment that he did not exhaust his administrative remedies: "In the instant case the plaintiff filed before the exhaustion of administrative remedies." (Docket No. 68, at 5.) Strange even acknowledged that the exhaustion is mandatory. (Docket No. 68, at 5.) However, Strange maintains that exhaustion is not required here because the remedies available to him provided no genuine opportunity for relief and because irreparable injury will occur unless the Court hears his unexhausted claims. (Docket No. 68, at 2-4.) He also proposes that an exception to the exhaustion requirement should apply "if a prisoner had a pretty good reason for not having exhausted before filing, as in the case filed here." (Docket No. 68, at 4.) Finally, he argues that "if you didn't exhaust and you think you have a good enough reason the Court at least has the power to consider your argument." (Docket No. 68, at 5.) He concludes with the guarantee that "if this court will dismiss the claim for failure to exhaust, [t]he plaintiff will exhaust and refile the claim." (Docket No. 68, at 6-7.)

Based on the evidence of record and Strange's own admission, the Court finds that Strange has failed to exhaust his available administrative remedies as required by the PLRA § 1997e(a). He filed no grievances relative to his freedom of religion claim and did not appeal the only grievance filed relative to his medical treatment claim. He filed one grievance, Grievance #5, which does relate to the claims in his Amended Complaint for confiscation or deprivation of various magazines and periodicals; but he

did not appeal that grievance. Thus, he did not properly exhaust his available remedies because he failed to comply with prison grievance procedures. *See Jones*, 549 U.S. at 218. *Woodford*, 548 U.S. at 91. He filed only one appeal on one grievance that is marginally related to his remaining claims; however, the Court finds that grievance and appeal are not relevant because neither his Complaint nor Amended Complaint make any mention of the items relative to that grievance. It is clear to the Court that Strange was aware of the grievance and appeal procedure, as evidenced by his receipt and signing of the Jail policy describing those procedures and also by the several other grievances he filed. Further, the Court is unpersuaded by Strange's proposition that he should be relieved from the PLRA's requirement that he properly exhaust his claims.[1] Therefore, the Court concludes that summary judgment is appropriate as to each of Strange's remaining claims against these Defendants because he failed to properly exhaust his available administrative remedies as required by the PLRA § 1997e(a).

---

[1] The authorities cited by Strange in his Response do not abrogate the PLRA's exhaustion requirement as he suggests. Strange relies most heavily on a decision by the Western District of Michigan, *Jenkins v. Toombs*, 32 F. Supp. 2d 955 (W.D. Mich. 1999), and on a decision by the Second Circuit Court of Appeals, *Howell v. INS*, 72 F.3d 288 (2d Cir. 1995). *Jenkins* which dealt with the total exhaustion rule prior to the Sixth Circuit's decision in *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005), actually cuts against Strange's argument because the court in *Jenkins* decided that the plaintiff's unexhausted claims still must be dismissed even if other properly exhausted claims remained. 32 F. Supp. 2d at 959. *Howell* dealt with a wholly different context, exhaustion in immigration proceedings and the administrative functions of the Immigration and Naturalization service, and did not pertain in any way to the PLRA. *See* 72 F.3d at 290-94. Moreover, even if *Jenkins* or *Howell* supported Plaintiff's position here, neither of those cases has any controlling authority on this Court's decision. Finally, the Court notes that binding Supreme Court precedent makes clear that exhaustion is mandatory and not a matter within this Court's discretion. *Porter*, 534 U.S. at 524.

CONCLUSION

For these reasons, the Court will GRANT both Defendant Pruitt and Defendants Strode and Edmonds' Motions to Dismiss, (Docket Nos. 37 & 54), and will DENY as moot Plaintiff's Motion for Summary Judgment, (Docket No. 36), and Defendant Pruitt's Motion for Leave to File Supplement to Motion for Summary Judgment, (Docket No. 79). An appropriate Order of dismissal will issue separately with this Opinion.


Date:


cc: Counsel
 Calvin D. Strange, *pro se*